# In the

# United States Court of Appeals

## For the Seventh Circuit

───────────

No. 05-1583

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KERBY GROSS,

*Defendant-Appellant.*

───────────

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 280—**David H. Coar**, *Judge.*

───────────

ARGUED NOVEMBER 28, 2005—DECIDED FEBRUARY 14, 2006

───────────

Before KANNE, ROVNER, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Kerby Gross has had a sad and troubled life marked by his experiences as a victim and perpetrator of child sexual abuse. He is before us after pleading guilty to distributing child pornography, and he asks us to consider whether the application of the mandatory minimum sentence in 18 U.S.C. § 2252A(b)(1) to him constitutes cruel and unusual punishment in violation of the Eighth Amendment. Because we conclude that Gross's sentence of fifteen years (the mandatory minimum) is not grossly disproportionate and therefore does not violate the Eighth Amendment, we affirm.

## I. HISTORY

Gross is a convicted sex offender. As is not unusual in these cases, he was subjected to unspeakable abuse throughout his childhood. Gross's parents separated when he was two years old, and he was eventually raised by his mother. Beginning at a very young age Gross was sexually abused by four of his mother's brothers—men who should have protected and nurtured him but instead used him for their own deviant pleasure. By the time he was twelve, Gross was being raped several times a week by two of his uncles. And at the age of thirteen, while still the victim of ongoing sexual abuse, Gross committed his first act of sexual assault against a younger child. For this crime he was adjudicated as a juvenile delinquent and placed into the residential custody of the Illinois Department of Children and Family Services ("DCFS") until he was nearly eighteen years old.[1]

Gross's life changed little after his release from DCFS. He moved back in with his mother, who shortly thereafter decided to relocate the family to Las Vegas, Nevada, to live with one of her brothers. She was unaware that this brother had previously abused Gross, and after they moved in, the abuse began again. Gross quickly found himself on the other side of the abuse cycle again. In 1991, at the age of nineteen, he was arrested in Nevada for sexual assault of a minor and lewdness with a minor; both victims were under the age of fourteen. He pled guilty and was sentenced on the two counts to ten years' imprisonment for lewdness and life imprisonment with the possibility of parole for sexual assault.

---

[1]  This conviction had no effect on Gross's sentence and has never been relied upon or mentioned by the government in this appeal. We mention it here only to provide a more complete picture of Gross's background, as Gross himself does in his brief.

In 1999, Gross was paroled and returned to Chicago as a registered sex offender. In some ways his life seemed to stabilize; he became the first person in his extended family to graduate from college, was gainfully employed, and kept up with his mandated sex-offender treatment. But Gross did not comport his conduct to the law and was eventually arrested for distributing child pornography over the Internet. Specifically, on May 4, 2003, Gross posted at least 15 still images of child pornography in a folder he created entitled, "Babyfun2". On October 22, 2003, he posted a movie depicting an adult male engaging in sexually explicit contact with a prepubescent female. All of these acts were done while Gross was still on parole from his Nevada convictions.[2]

Gross pled guilty in October of 2004 to one count of knowingly distributing child pornography through interstate commerce in violation of 18 U.S.C. § 2252A(a)(2)(A). In his written plea agreement, he recognized that because his previous convictions in Nevada "relat[ed] to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor," the single count of child pornography for which he was pleading guilty carried a statutory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 2252A(b)(1).

Prior to sentencing, Gross challenged the constitutionality of § 2252A(b)(1)'s mandatory minimum. The district court found Gross's constitutional objection to be substantial, but eventually concluded that while the fifteen-year sentence was harsh, it was not so disproportionate as to violate the Eighth Amendment. Accordingly, the district court sentenced Gross to the mandatory minimum.

---

[2] In his sentencing memorandum, Gross informed the district court that at the completion of his federal sentence he will be transferred to Nevada where he faces certain parole revocation.

## II. ANALYSIS

Gross challenges his sentence by relying upon the plurality decision in *Ewing v. California*, which recognizes "a 'narrow proportionality principle' that 'applies to noncapital sentences.'" 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Both Gross and the government agree that under the plurality's approach in *Ewing*, our first task is to ascertain whether Gross's case is "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* (quoting *Harmelin*, 501 U.S. at 1005). Absent such an inference, we need not conduct any "comparative analysis 'within and between jurisdictions.'" *Id.* at 23, 30 (quoting *Harmelin*, 501 U.S. at 1004-05).

Before addressing the particulars of Gross's argument, it is important to note the Supreme Court's admonishment that "successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 22 (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982)). The Court's precedent in this area reflects how high the bar is set. *See id.* at 28-31 (affirming sentence of 25 years to life imposed for felony grand theft of three golf clubs under three strikes law); *Harmelin*, 501 U.S. at 961, 996 (affirming life in prison without the possibility of parole for first-time offender possessing 672 grams of cocaine); *Davis*, 454 U.S. at 370-71 (no constitutional error in two consecutive terms of 20 years in prison for possession with intent to distribute and distribution of 9 ounces of marijuana); *Rummel v. Estelle*, 445 U.S. 263, 265-66, 285 (1980) (upholding life in prison without the possibility of parole under three strikes law where triggering offense was obtaining $120.75 by false pretenses and the loss amount of the two previous fraud felonies was $80, and $28.36, respectively). *But see Solem*

*v. Helm*, 463 U.S. 277, 296-97, 303 (1983) (holding that the Eighth Amendment prohibited a sentence of life without the possibility of parole where the defendant had previously committed six "minor" and "nonviolent" felonies and his triggering offense was uttering a "no account" check for $100).

Under this precedent, it is clear that Gross's case is not the rare one in which comparing the gravity of the offense to the harshness of the sentence leads to an inference of gross disproportionality. *Ewing*, 538 U.S. at 30. Gross's offense is quite serious. The distribution of child pornography creates a market for its production, which inevitably leads to the abuse of children. *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990). Furthermore, the dissemination of child pornography, even by those such as Gross who had no involvement in its production, "causes the child victims continuing harm by haunting the children in years to come." *Id.* at 111 (citation omitted); *see also United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their interests in avoiding the disclosure of personal matters." (citing *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982))).

Gross attempts to minimize the magnitude of his crime by arguing that it was "nonviolent" because he merely possessed and distributed the child pornography, as opposed to being involved in its production. It may be true that there is only an indirect link between Gross's crime and any actual violence to children. *See Sherman*, 268 F.3d at 546 (explaining, for purposes of grouping under the Sentencing Guidelines, that the "market maker theory provides only an indirect link between a particular child used in the production of pornography and a later purchaser or possessor of that material"). But this distinction does little for Gross

because whether described as violent or nonviolent, as explained above, Gross's crime is still very serious. Furthermore, Gross's offense is at least as serious as those held by the Supreme Court to permissibly trigger sentences of up to life in prison. *See Ewing,* 538 U.S. at 28-31 (25 years to life where triggering offense was felony grand theft of three golf clubs); *Rummel,* 445 U.S. at 284-85 (life in prison without the possibility of parole where triggering offense was obtaining $120.75 by false pretenses). Nor can Gross's offense be described as "one of the most passive felonies a person could commit," as was the case in *Solem,* where the court found an Eighth Amendment violation when the triggering offense was uttering a "no account" check for $100. *See* 463 U.S. at 296-97.

Moreover, Gross did not merely plead guilty to distribution of child pornography; he pled guilty to distributing child pornography after already having convictions "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." These previous convictions led to the imposition of the mandatory minimum for the triggering offense of possessing child pornography. 18 U.S.C. § 2252A(b)(1). Therefore, when considering the gravity of Gross's offense, we must consider these convictions, because "[a]ny other approach would fail to accord proper deference to the policy judgments that find expression in [Congress's] choice of sanctions." *Ewing,* 538 U.S. at 29; *Solem,* 463 U.S. at 296 n.21.

There can be no doubt that Gross's two previous felony convictions, which included sexual assault of a child under the age of fourteen, were serious and violent felonies. These convictions far remove Gross from the defendant in *Solem* whose prior offenses were all "minor" and "nonviolent." *See* 463 U.S. at 296-97. Instead, the gravity of Gross's offense is at least as serious as the two recidivist defendants for whom the Supreme Court has denied relief; and the fifteen-

year sentence Gross received is less harsh than the sentences in those cases. *See Ewing*, 538 U.S. at 19 (previous felonies of burglary and robbery and a sentence of 25 years to life); *Rummel*, 445 U.S. 265-67 (previous felonies involving small amounts of money and a sentence of life in prison with the possibility of parole). Under the Supreme Court's precedent, Gross's Eighth Amendment challenge must fail, and we need not conduct any analysis "within and between jurisdictions." *Ewing*, 538 U.S. at 23, 30.

This conclusion is not altered by Gross's argument that his previous victimization mitigates his culpability. Gross may or may not be less culpable, morally speaking, because of what he has been through. But a defendant's culpability is not the only basis for imposing a prison sentence. Deterrence and incapacitation are also reasons to punish. *Id.* at 24-25 ("A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation." (citing 1 W. LaFave & A. Scott, Substantive Criminal Law § 1.5, pp. 30-36 (1986))). When punishing the distribution of child pornography, it is entirely reasonable for Congress to have heightened concern—expressed in harsher punishments—with individuals such as Gross who have already been convicted of sexually abusing a minor yet will not or cannot comport their conduct to the dictates of the law. *Id.* at 30 (explaining that the defendant's sentence "reflect[ed] a legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated").

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the district court that the mandatory minimum sentence of fifteen years imposed on Gross under 18 U.S.C. § 2252A(b)(1) is not grossly disproportionate and therefore

does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.

**A true Copy:**

      **Teste:**

                          _____

                          *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*