In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3350

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARRETT DAVARRASS SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:11-CR-140 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED OCTOBER 2, 2013 — DECIDED JULY 17, 2014

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Garrett Smith pleaded guilty to a
charge that he possessed with the intent to distribute 500
grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1),
and the district court ordered him to serve a prison term of 168
months. Despite having expressly waived his right to appeal
the sentence in his written plea agreement, Smith nonetheless
has appealed, contending that he was deprived of the effective

assistance of counsel when his counsel failed to challenge the district court's finding that he was a career offender. Smith urges us to overlook the waiver on the ground that his attorney's alleged ineffectiveness at sentencing was "patent." We enforce the appellate waiver and dismiss the appeal.

**I.**

A tip identified Smith to federal agents as a possible cocaine dealer. Armed with a search warrant, they arrived at his apartment to discover 806.5 grams of powder cocaine, 148.6 grams of crack cocaine, 603.4 grams of marijuana, and a loaded Glock handgun. Smith admitted to the agents that the drugs were his and that he intended to distribute them. He was eventually charged in a three-count indictment of possessing with the intent to distribute cocaine, crack cocaine, and marijuana, all in violation of section 841(a)(1).

Smith's retained counsel negotiated a plea agreement which was committed to writing. Smith agreed to plead guilty to Count 1 of the indictment, the cocaine count, to cooperate with the government, and to waive his appellate rights. The government agreed in exchange to dismiss Counts 2 and 3 of the indictment, not to pursue enhanced statutory penalties based on Smith's prior narcotics conviction, *see* 21 U.S.C. § 851, to recommend that Smith receive maximum credit for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b), to consider filing a motion to reduce the Sentencing Guidelines range in recognition of Smith's cooperation, *see* U.S.S.G. § 5K1.1, and to recommend that the court impose a sentence at the bottom of the advisory Guidelines range.

The provision of the plea agreement concerning Smith's appellate rights is quite clear as to what Smith was waiving. As we rest our decision on the waiver, the text of this provision merits quoting in full:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255[.]

R. 15 at 5 ¶ 7i.

At the change of plea hearing, the district court engaged in a thorough colloquy with Smith before accepting his guilty plea. During that colloquy, in response to the court's questions, Smith confirmed that he had discussed all aspects of the appellate waiver with his counsel and that he had agreed to the

waiver. In response to the court's questions, Smith acknowledged that he was giving up his right to appeal both his conviction and sentence and the manner in which his sentence was imposed. R. 54 at 19-21. The court specifically admonished Smith that he was surrendering the right to claim that his counsel was ineffective, except insofar as the claimed ineffectiveness related to the waiver itself or the negotiation of the waiver. *Id.* at 21. Smith indicated that he understood this aspect of the waiver, confirmed that he had consented to it, and agreed with the court's statement that as a consequence of the waiver he "would most likely be prohibited from appealing the sentence" that the court would later impose upon him. *Id.* At the conclusion of the colloquy, the court accepted Smith's guilty plea but postponed final acceptance of the plea agreement pending preparation and review of the presentence report ("PSR") by the probation officer. *See* U.S.S.G. § 6B1.1(c).

The PSR determined that Smith qualified as a career offender, in view of his prior federal narcotics conviction and his prior conviction in Indiana state court for reckless homicide, which convictions counted as convictions for a controlled substance offense and a crime of violence, respectively, for purposes of the career offender guideline. *See* U.S.S.G. §§ 4B1.1(a), 4B1.2. This determination increased Smith's total, adjusted offense level from 29 to 31 and increased his criminal history category from IV to VI. As a result, the advisory Guidelines range increased from 121-151 months to 188-235 months.

Although neither party filed written objections to the PSR, when the district court convened the sentencing hearing, Smith himself voiced an objection to the PSR's findings that he had

possessed a firearm during the instant narcotics offense, *see* U.S.S.G. § 2D1.1(b)(1), and that he had maintained a premises (his apartment) for the purpose of distributing controlled substances, *see* U.S.S.G. § 2D1.1(b)(12). Although each of these findings called for a two-level increase to the offense level, Smith's counsel noted that it was Smith's career offender status that ultimately established Smith's total offense level (because the career offender guideline specifies a particular offense level that will apply if it is greater than the offense level as otherwise calculated, *see* § 4B1.1(b)) and that, consequently, Smith's objections would have no impact on the offense level. Counsel's observation prompted the court to ask Smith whether he had any objection to the career offender finding, and Smith stated, twice, that he had no such objection. R. 55 at 17. (Smith later did voice some disagreement with the career offender designation as an unfair rhetorical description of him as a person but not as a mistaken Guidelines determination.) Nonetheless, the court directed counsel for both parties and the probation officer to address Smith's objections to the firearm and maintenance-of-premises findings in writing, and recessed the sentencing hearing for two weeks for that purpose. Smith's counsel submitted a statement to the probation officer indicating that Smith had stipulated to a two-point enhancement for possession of the firearm in the plea agreement and noting that counsel could discern no basis for contesting the maintenance-of-premises enhancement. R. 35 at 2. The probation officer reaffirmed the propriety of both enhancements. *Id.* at 2-3.

When the court reconvened the sentencing hearing, the court formally accepted the plea agreement, overruled Smith's objections to the PSR, and adopted the findings and calcula-

tions of the PSR, which produced an advisory sentencing range of 188 to 235 months. In light of Smith's cooperation, the government asked the court pursuant to section 5K1.1 for a one-level reduction in Smith's offense level, which reduced the range to 168 to 210 months, and asked the court to impose a sentence at the bottom of that range. The court granted the request for an offense-level reduction and, after hearing from both defense counsel (who urged a 120-month sentence) and Smith himself, imposed a sentence of 168 months. R. 56.

## II.

Smith's appeal is premised on the notion that he is not, contrary to the district court's finding, a career offender. Specifically, he contends that his prior conviction for reckless homicide does not qualify as a crime of violence for purposes of the career offender guideline. If he were correct in that assertion (a point we do not reach), then he would lack the second prior conviction necessary to classify him as a career offender. *See* § 4B1.1(a)(3). Of course, Smith did not make this objection below. This is the springboard for his ineffectiveness argument: Smith's position, in essence, is that a competent attorney would have recognized the problem with the reckless homicide conviction as a predicate for the career offender finding, and that his counsel was therefore ineffective for not objecting. On that basis, he asks us to vacate his sentence and remand for resentencing.

The obvious obstacle to the appeal lies in Smith's waiver of his appellate rights. Smith does not wish to be released from the plea agreement, which he entered into knowingly and voluntarily. He concedes that the appellate waiver contained

within that agreement on its face precludes the sort of ineffec-tiveness claim he is attempting to pursue in this appeal. He makes no argument that his counsel was ineffective in negoti-ating the plea agreement (including the waiver), which is the only iteration of ineffectiveness that the waiver preserves. Nor, obviously, is he arguing that his sentence exceeded the statutory maximum or was the product of an impermissible factor, such as race. Collectively, these are the only sorts of grounds which we have indicated may be sufficient to over-come a broad appellate waiver such as the one Smith know-ingly and voluntarily agreed to. *See, e.g.*, *United States v. Adkins*, 743 F.3d 176, 192–93 (7th Cir. 2014), *cert. denied*, 2014 WL 2210626 (U.S. June 23, 2014); *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012); *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).

Smith instead urges us to recognize a new exception for the "patent" ineffectiveness of counsel at sentencing. In his view, it should have been obvious to Smith's counsel below that reckless homicide does not qualify as a crime of violence, and given the significant impact of the career offender determina-tion on Smith's sentencing range, his counsel was not merely ineffective, but patently so, in neglecting to challenge it. On that basis, he urges us not to enforce the waiver.

We can find no support in the language of the plea agree-ment or in our cases for such an exception. When he signed the agreement, Smith "expressly waive[d] [his] right to appeal or to contest [his] conviction and [his] sentence or the manner in which [his] conviction or [his] sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective

assistance of counsel relates directly to this waiver or its negotiation." R. 15 at 5 ¶ 7i. Smith received substantial benefits in exchange for his agreement to the waiver and the other provisions of the plea agreement, including the government's agreement not to seek increased statutory penalties, to recommend that he receive an additional reduction in his offense level for his acceptance of responsibility, to consider asking for a further reduction in the offense level for providing substantial assistance to the government (which it did recommend), and to recommend a sentence at the bottom of the advisory Guidelines range. Plea agreements, although they are unique in the sense that they are negotiated, executed, approved, and enforced in the context of a criminal prosecution that affords the defendant a due process right to fundamental fairness, are contracts nonetheless. *See, e.g.*, *United States v. Bryant*, 750 F.3d 642, 649 (7th Cir. 2014); *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013); *United States v. Schilling*, 142 F.3d 388, 394–95 (7th Cir. 1993). They should be interpreted, therefore, according to their terms. *United States v. Hernandez*, 544 F.3d 743, 750–51 (7th Cir. 2008). When the defendant pursuant to the plea agreement has knowingly and voluntarily waived his appellate rights, and the terms of that waiver are express and unambiguous, we will enforce those terms. *E.g.*, *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010). Here the waiver could not be more clear. By waiving "*any* claim of ineffective assistance of counsel," other than one relating to the waiver or its negotiation, Smith waived all manner of ineffectiveness claims, however the asserted ineffectiveness might be characterized—patent, subtle, or otherwise.

There is no doubt that a defendant may waive his right to challenge a sentence not yet imposed, including challenges based on the ineffectiveness of his counsel at sentencing. *See Nunez v. United States*, 495 F.3d 544, 546, 548 (7th Cir. 2007) (ineffectiveness claim premised on attorney's conduct post-dating plea is foreclosed by waiver), *judgment vacated and remanded on other grounds*, 554 U.S. 911, 128 S. Ct. 2990 (2008). We have repeatedly enforced such waivers and dismissed appeals contending that the defendant was deprived of the effective assistance of sentencing counsel. *See United States v. Jemison*, 237 F.3d 911, 917–18 (7th Cir. 2001); *Bridgeman v. United States*, 229 F.3d 589, 592–93 (7th Cir. 2000); *Mason v. United States*, 211 F.3d 1065, 1069–70 (7th Cir. 2000); *United States v. Joiner*, 183 F.3d 635, 644–45 (7th Cir. 1999); *see also Nunez v. United States*, 546 F.3d 450 (7th Cir. 2008) (counsel was not ineffective in failing to file appeal that was barred by appellate waiver).

The sole type of ineffectiveness claim we have said that a defendant may not waive is an ineffectiveness claim having to do with the waiver (or the plea agreement as a whole) and its negotiation. *See Hurlow v. United States*, 726 F.3d 958, 964–66 (7th Cir. 2013). Again, this is the one variant of ineffectiveness that Smith's appellate waiver expressly preserved. But it is distinctly *not* the type of ineffectiveness claim that Smith is attempting to pursue.

Smith may think that the court committed a mistake in classifying him as a career offender, but we have held that appeal waivers preclude appellate review even of errors that are plain in retrospect. *See, e.g., Keller, supra*, 657 F.3d at 682 n.5;

*United States v. Cavender*, 228 F3d 792, 803 (7th Cir. 2000); *United States v. Kratz*, 179 F.3d 1039, 1042–43 (7th Cir. 1999); *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997); *see also United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2013) (en banc) (collecting cases). The point of an appeal waiver, after all, is to prospectively surrender one's right to appeal, no matter how obvious or compelling the basis for an appeal may later turn out to be. *See United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995).

Smith's appeal implicates his constitutional right to effective assistance of counsel, but simply because the error of which he complains involves a constitutional right does not relieve him of the waiver. We have repeatedly said that a defendant's freedom to waive his appellate rights includes the ability to waive his right to make constitutionally-based appellate arguments. *See, e.g.*, *Adkins*, 743 F.3d at 193; *United States v. Davey*, 550 F.3d 653, 658 (7th Cir. 2008); *Nunez*, 495 F.3d at 548; *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005); *United States v. Nave*, 302 F.3d 719, 720 (7th Cir. 2002); *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000). The exceptions to this rule are few in number and are limited to matters that implicate the fundamental fairness of the proceeding. *See Adkins*, 743 F.3d at 192–93; *Keller*, *supra*, 657 F.3d at 681. Smith's appeal does not fall within one of those limited exceptions.

Nothing we have said should be construed as implying that the district court in fact did err by classifying Smith as a career offender or that Smith's counsel was ineffective in not objecting to the classification. The briefing suggests that the issue may

not be as straightforward as Smith's appellate counsel portrays it. Our point is that however clear a sentencing error the defendant believes the district court to have committed, or however obvious an error he believes his counsel committed in not objecting to the court's sentencing decision, when the defendant has knowingly and voluntarily waived his right to appeal such errors, the obviousness of the error does not support overlooking the waiver.

### III.

Smith knowingly and voluntarily waived his appellate rights, including his right on appeal to contend that his counsel below was ineffective as to any matter other than the waiver and his negotiation of it. He is, consequently, barred from pursuing the instant appeal. The appeal is therefore DISMISSED.